## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**LYNNETTA MARTIN, individually**
**and on behalf of a class of similarly**
**situated persons,**

|  |  |
|---|---|
|  | **Civil Action No. 5:12-cv-3937** |
| **Plaintiff,** | **Honorable David A. Faber** |

**v.**

**MOUNTAIN STATE UNIVERSITY, INC.,**
**CHARLES H. POLK, and TRUSTEES**
**JERRY T. ICE, V. MAX BEARD,**
**MONA K. WISEMAN, FRANK S. HARKINS, JR.,**
**HARRIET W. CABELL, ELMER COPPOOLSE,**
**and LYNN BLANCHARD**

      **Defendants.**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Lynnetta Martin, individually and on behalf of a class of similarly situated persons, by and through her attorneys, The Bell Law Firm, PLLC and The Googasian Firm, P.C., alleges as follows for her Amended Class Action Complaint:

### Nature of Action

1.      This is a class action seeking damages and other remedies for Plaintiff and a class of similarly situated individuals who enrolled in accredited educational programs through Mountain State University, Inc. ("Mountain State") seeking certificates, associate degrees, bachelor degrees, and other accredited academic credentials.  On June 28, 2012, the Higher Learning Commission, Mountain State's accrediting body, took action to withdraw Mountain State's accreditation.

Mountain State's loss of accreditation has made it impossible for Plaintiff and other class members to obtain the accredited credentials from Mountain State for which they had been paying tuition and pursuing coursework.  Plaintiff seeks damages for herself and all Class Members for negligence and other claims as a result of Mountain State's failure to fulfill its obligations to maintain accreditation.

2.      As a result of Mountain State's breaches of its duties and obligations, Plaintiff and other Class Members cannot complete accredited programs and obtain accredited credentials for which they have been paying substantial tuition.

### Parties, Jurisdiction and Venue

3.      At all relevant times, Plaintiff Lynnetta Martin was a resident of West Chester, Ohio.

4.      At all relevant times, Defendant Mountain State University, Inc. was a West Virginia corporation with its principal place of business in Beckley, West Virginia.

5.      At all relevant times until approximately January 2012, Defendant Charles H. Polk ("Polk") was the President of Mountain State, a trustee of Mountain State, and a resident of West Virginia.

6.      At all relevant times, Defendant Jerry T. Ice was a trustee of Mountain State and a resident of West Virginia.

7.      At all relevant times, Defendant V. Max Beard was a trustee of Mountain State and a resident of West Virginia.

8.      At all relevant times, Defendant Mona K. Wiseman was a trustee of Mountain State and a resident of West Virginia.

9.      At all relevant times, Defendant Frank S. Harkins, Jr. was a trustee of Mountain State

2

and a resident of West Virginia.

10. At all relevant times, Defendant Harriet W. Cabell was a trustee of Mountain State and a resident of West Virginia.

11. At all relevant times, Defendant Elmer Cappoolse was a trustee of Mountain State and a resident of West Virginia.

12. At all relevant times, Defendant Lynn Blanchard was a trustee of Mountain State and a resident of West Virginia.

13. Defendants Jerry T. Ice, V. Max Beard, Mona K. Wiseman, Frank S. Harkins, Jr., Harriet W. Cabell, Elmer Cappoolse and Lynn Blanchard will be referred to in this Complaint collectively as "Trustee Defendants."

14. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(d).

15. Venue exists pursuant to 28 U.S.C. § 1391(a).

16. The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

### Class Action Allegations

17. Plaintiff hereby incorporates by reference the preceding allegations.

18. Mountain State is a private university located in Beckley, West Virginia.

19. The individual defendants are, respectively, the former President of Mountain State and current or former Trustees of Mountain State.

20. Plaintiff Martin enrolled in Mountain State in or about 2010 in an online computer science associate degree program.

21. At the time that Plaintiff Martin enrolled and at all relevant times, Mountain State

3

held itself out as an accredited institution holding regional accreditation from the Higher Learning Commission of the North Central Association of Colleges and Schools and offering accredited education and academic credentials.

22.     Plaintiff Martin has incurred thousands of dollars in tuition expenses in connection with pursuing her education from Mountain State.

23.     Plaintiff Martin brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(b)(2) and (3), on behalf of a Class defined as:

> All individuals who reside outside West Virginia and had enrolled in any program at Mountain State University prior to July 10, 2012.

24.     Class Members each submitted a substantial amount of money for programs of study at Mountain State.

25.     The Class includes all students who, like Plaintiff Martin reside outside West Virginia and had enrolled in a program at Mountain State prior to July 10, 2012.

26.     Upon information and belief, the Class includes at least one thousand students across the country who were actively enrolled in Mountain State but had not completed the courses of study in their respective programs prior to the announcement of Mountain State's loss of accreditation.

27.     The Class is so numerous that joinder of all members is impracticable.

28.     Recent reports from U.S. News indicate that nearly 31 percent of Mountain State students are located outside West Virginia.

29.     Reports place Mountain State's current enrollment to be between 3,000 and 4,500 students.

30.     Joinder of a class of at least 1,000 to 1,500 or more students would be impracticable.

4

31.    There are questions of law or fact common to the members of the Class that predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

32.    The claims of Plaintiff Martin are typical of the claims of the other members of the Class.

33.    Plaintiff Martin will fairly and adequately assert and protect the interests of the Class.

34.    The maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

35.    Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

36.    Class Members have not demonstrated an interest in individually controlling the prosecution or defense of separate actions.

37.    Plaintiff is not aware of any litigation concerning the controversy already commenced by members of the class.

38.    It is desirable to concentrate the litigation in this particular forum because Mountain State is located here.

39.    No difficulties are likely to be encountered in the management of a class action.

40.    Mountain State has acted and refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate regarding the class as a whole.

### General Allegations regarding Mountain State

41.    Mountain State is a private school that has been located in West Virginia since its

founding in 1933.

42.     Mountain State was originally named "Beckley College" at the time of its founding, and became known as Mountain State University in 2001.

43.     Mountain State's main campus is located in Beckley, West Virginia.

44.     Mountain State offers more than 60 associate's, bachelor's and graduate degree programs, as well as certificate programs.

45.     Mountain State offers a variety of class formats, including traditional classroom study, accelerated cohorts, online classes, and independent study.

46.     Mountain State's official website is located at www.mountainstate.edu.

47.     Mountain State received regional accreditation from the Higher Learning Commission in 1981.

48.     Accreditation is essential to the value of programs offered by Mountain State, including, but not limited to, with regard to attaining professional certifications and licenses, employment, further education, and credit transfers.

49.     Mountain State has emphasized that its credits "come from an accredited institution." www.mountainstate.edu/about-msu/accreditation.aspx.

50.     Following its receipt of regional accreditation from the Higher Learning Commission, Mountain State held itself out as an accredited educational institution, including at all relevant times, on its official website at www.mountainstate.edu/about-msu/accreditation.aspx.

### Mountain State's Departure from Its Mission, Principles and Core Values

51.     At all relevant times, Mountain State had a mission statement stating in part that "we

6

respond to educational needs by providing accessible, innovative undergraduate and graduate programs that lead to opportunities for personal and professional success."

52.     At all relevant times, Mountain State publicly stated that it was committed to principles, including supporting students with qualified, engaged faculty and staff; providing accessible and affordable private education; preparing students for the global marketplace; maintaining high ethical standards; and upholding academic integrity through an active assessment program.

53.     At all relevant times, Mountain State publicly stated that its core values included excellence, vision, integrity, and responsiveness.

54.     Mountain State, Polk and the Trustee Defendants owed a duty to Plaintiff and all Class Members to maintain Mountain State's accreditation and adhere to its mission statement, principles and core values.

55.     In numerous ways, Mountain State, Polk and the Trustee Defendants breached this duty, resulting in problems at Mountain State that led the Higher Learning Commission to take action to withdraw accreditation.

**The Hiring of Charles Polk at Mountain State**

56.     In 1990, Polk became president of Mountain State.

57.     Prior to arriving at Mountain State, Polk had resigned as president of Daytona Beach Community College in Florida amidst a state ethics investigation.

58.     Upon information and belief, Polk was investigated by the Florida Ethics Commission for allegedly violating Florida law for having a contractual relationship with a real estate developer

7

who was doing business with the college.

59.     Upon information and belief, the Florida Ethics Commission subsequently found that Polk had violated Florida law and said he should be publicly censured.

60.     At the time of Polk's eventual firing at Mountain State in 2012, Polk had become one of the most highly compensated university presidents, according to published reports.

61.     According to one published report, Polk's compensation during one particular year comprised approximately 3.5 percent of Mountain State's budget, while most colleges spend less than one-half of one percent of their budgets on their presidents.

62.     At the time of his ouster, Polk also was facing criticism for frequent use of two Mountain State airplanes for alleged personal trips, including more than 100 flights to and from a regional airport in North Carolina near a home Polk owned there and at least 18 flights to and from Lufkin, Texas, his hometown.   Published reports stated that all flights of the Mountain State planes were billed to the university's operational budget.

**Mountain State's Tremendous Expansion**

63.     Under Polk's leadership at Mountain State, tremendous expansion and changes occurred.

64.     Mountain State began, under Polk's direction, an effort to increase its size and tuition revenue, with expansion that included the addition of several different campuses in other states as well as online offerings.

65.     Mountain State opened physical locations in Florida, North Carolina, and Pennsylvania.

8

66.     The expansion undertaken by Mountain State, Polk and the Trustee Defendants failed to preserve the academic and financial standing of the school.

67.     Through numerous acts and omissions, Mountain State, Polk and the Trustee Defendants undermined the academic and financial standing of the school, resulting in problems at Mountain State that led the Higher Learning Commission to take action to withdraw accreditation.

### Mountain State's Purchase of a Mall

68.     The expansion at Mountain State prompted Mountain State, Polk, and the Trustee Defendants to take drastic financial steps.

69.     One such step was Mountain State's purchase in 2010 of a real estate holding known as the Martinsburg Mall, near Mountain State's newer Martinsburg campus.

70.     The Martinsburg Mall had failed as a retail mall and was in bankruptcy at the time Mountain State purchased it.

71.     The Martinsburg Mall consisted of more than 550,000 square feet of retail and other space on approximately 79 acres.

72.     Mountain State borrowed $7 million in order to finance the purchase of the Martinsburg Mall.

73.     The following year, Mountain State took on $10.2 million in debt to refinance its $7 million purchase loan and fund improvements to the mall to allow it to eventually serve students.

74.     According to a press release issued by Mountain State regarding the purchase of the Martinsburg Mall, Mountain State's executive vice president Layne Diehl agreed that the purchase of the mall was made necessary because of the school's explosive growth, and is quoted as saying

"MSU's Martinsburg Campus enrollment has grown by over 30 percent each year in the last three years."

75.     According to this press release issued by Mountain State regarding the purchase of the Martinsburg Mall, "With the tremendous growth experienced over the last few years, it became obvious very quickly that [Mountain State] needed more space in order to continue to expand programmatic offerings."

76.     In the press release, Mountain State stated it would open an "integrated learning center aimed at bringing in new MSU students and increasing the foot traffic to stores and restaurants."

77.     Upon information and belief, the learning center has never fully opened.

78.     Upon information and belief, Mountain State is now investigating sale of the Martinsburg Mall property.

### Mountain State's Accreditation Problems

79.     Mountain State began to face increasing accreditation problems at least by 2008, following years of expansion under Polk's leadership.

80.     In 2008, the Higher Learning Commission, Mountain State's regional accrediting agency, warned Mountain State and the Trustee Defendants that Mountain State was in jeopardy of losing accreditation if it did not make major improvements to the school's governance, long-term plans, faculty, finances, and other matters.

81.     Mountain State, Polk, and the Trustee Defendants failed to take appropriate action in response to the warning from the Higher Learning Commission.

10

82.     Despite having notice by at least 2008 that the university's accreditation was in jeopardy, Mountain State, Polk, and the Trustee Defendants, through numerous acts and omissions, did not correct problems in governance, planning, education, finances and other areas.

83.     In 2010, Mountain State lost national accreditation for its nursing program.

84.     In 2010, the National League For Nursing Accreditation Commission withdrew accreditation of Mountain State's nursing program.

85.     The West Virginia Board of Examiners for Registered Professional Nurses placed Mountain State on provisional status.

86.     Following these events relating to nursing program accreditation, the Higher Learning Commission initiated further review of the institution in light of the actions taken with respect to Mountain State's nursing program.

87.     In February 2011, an advisory team from the Higher Learning Commission conducted an on-site visit to Mountain State.

88.     The advisory team issued a report finding that Mountain State was potentially non-compliant with the Criteria for Accreditation.

89.     On or about June 23, 2011, the Higher Learning Commission issued a show cause order that placed Mountain State on show cause status with respect to its accreditation from the Higher Learning Commission.

90.     The Higher Learning Commission in June 2011 "determined that the University may not meet one or more Criteria for Accreditation and ordered the University to Show Cause as to why its accreditation should not be removed."

11

91.     The Higher Learning Commission informed Mountain State in June 2011 that "[a]n institution that cannot prove to the Commission within no more than one year of the issuance of the order that it meets the criteria for Accreditation and Core Components and has ameliorated the concerns leading to the issuance of the Order faces withdrawal of accreditation."

92.     The Higher Learning Commission expressed concern relating to "Criterion One," whether "the institution operates with integrity . . . and the institution's governance and administrative structures promote effective leadership[.]"

93.     The Higher Learning Commission expressed concern relating to "Criterion Two," in particular regarding "the institution's allocation of resources and its processes for evaluation and planning demonstrate its capacity to fulfill its mission . . . [and] the institution's resource base supports its educational programs and its plans for maintaining and strengthening their quality in the future."

94.     The Higher Learning Commission expressed concern relating to "Criterion Three," in particular whether "the institution provides evidence of student learning and teaching effectiveness that demonstrates it is fulfilling its educational mission [and whether] the institution's learning resources support student learning and effective teaching."

95.     Upon information and belief, Mountain State, Polk and the Trustee Defendants failed to take appropriate steps to respond to or remedy the concerns and deficiencies identified by the Higher Learning Commission.

96.     Upon information and belief, at least some Trustee Defendants were unaware of any problems with the school's programs.

97.     On information and belief, Trustee Defendants were willfully ignorant of Polk's actions and the actual state of affairs at Mountain State.

98.     On information and belief, Trustee Defendants "rubber-stamped" Polk's decisions for Mountain State, approving his proposals and actions without any careful or meaningful review.

99.     On information and belief, at least some of the Higher Learning Commission's concerns related directly to Polk's excessive salary and the concern that Mountain State's resources should be devoted to improving teaching and student outcomes, not enriching its president.

100.    On information and belief, Mountain State, Polk and the Trustee Defendants failed to act promptly to remedy the Higher Learning Commission's concerns.

101.    Mountain State, Polk and the Trustee Defendants failed to take steps to fulfill their obligations as Trustees to monitor events at Mountain State and to remedy Polk's abuses that would have allowed Mountain State to preserve its accreditation.

102.    On or about November 12, 2010, the West Virginia Board of Examiners for Registered Professional Nurses ("State Nursing Board") issued a letter to Mountain State outlining deficiencies in Mountain State's nursing program that must be remedied.

103.    Between November 12, 2010 and January 2012, Mountain State, Polk, and the Trustee Defendants failed to heed the State Nursing Board's warning or remedy the deficiencies.

104.    In 2012, Mountain State lost accreditation from the State of West Virginia for its nursing program.

105.    The State Nursing Board on January 16, 2012, issued a unanimous decision that Mountain State had utterly failed to fulfill its obligations.

106.    The State Nursing Board found that Mountain State "failed to comply" with the State Nursing Board's standards or "to correct deficiencies as stated in the Board's letter of November 12, 2010."

107.    The State Nursing Board concluded that Mountain State "has a history of acting in direct disregard to [the State Nursing Board's] authority."

108.    The State Nursing Board concluded that Mountain State continued to "attempt[] to manipulate facts and information [that] has been both disrespectful and in total disregard to the standards set by the state legislature[,] this Board and national accrediting agencies of institutions of higher education.  The actions of [Mountain State] to date are inexcusable and defenseless."

109.    The State Nursing Board concluded that it was "in the best interest of the public" that Mountain State not be granted full accreditation.

110.    The State Nursing Board expressly found "[t]hat the students of [Mountain State] have been insurmountably harmed to a degree that is immeasurable by this agency."

111.    The State Nursing Board continued provisional accreditation for the benefit of the students, not the school.

112.    Among other orders, the State Nursing Board ordered Mountain State to "stop readmitting students into the nursing program and eliminate . . . any reference indicating that pursing a nursing degree at Mountain State University is a viable option at this time."

113.    In 2012, Mountain State's Diagnostic Medical Sonography program was placed on probation.

114.    On information and belief, the Higher Learning Commission informed Mountain

14

State that the centralization of power with Polk and a few administrators was a significant problem for accreditation.

115.    On information and belief, Mountain State, Polk and the Trustee Defendants did not promptly and reasonably act on this information.

116.    On or about February 13, 2012 to February 15, 2012, the Higher Learning Commission conducted a show cause visit at Mountain State.

117.    On or about April 13, 2012, the Higher Learning Commission was to submit a final report to Mountain State from the show cause visit.

118.    On or about May 7, 2012, a show cause hearing was held with the Higher Learning Commission board committee.

119.    On or about May 15, 2012, a transcript of the show cause hearing was sent to the Higher Learning Commission and Mountain State.

120.    On or about May 27, 2012, Mountain State's response to the show cause report was due to be submitted to the Higher Learning Commission.

121.    On or about June 28, 2012, the Higher Learning Commission Board of Trustees met to discuss and decide Mountain State's accreditation.

122.    On June 28, 2012, the Higher Learning Commission acted to withdraw Mountain State's regional accreditation effective August 27, 2012.

123.    The Higher Learning Commission's action to withdraw Mountain State's regional accreditation was made public on or about July 10, 2012.

124.    The action by the Higher Learning Commission to withdraw Mountain State's

accreditation came after years of concern expressed by the accrediting agency to Mountain State, Polk and the Trustee Defendants.

125.    Mountain State, Polk, and the Trustee Defendants repeatedly failed to take appropriate steps relating to the school's accreditation status, breaching their duty to Mountain State's students.

126.    The Higher Learning Commission concluded that Mountain State did not meet "Criteria One" for accreditation, which requires that "the institution operate[] with integrity to ensure the fulfillment of its mission through structures and processes that involved the board, administration, faculty, staff, and students." www.mountainstate.edu/about-msu/accreditation.aspx.

127.    The Higher Learning Commission found that Mountain State "lacks administrative structures that promote effective leadership" and "lacks the integrity expected in an accredited institution of higher education." www.mountainstate.edu/about-msu/accreditation.aspx.

128.    The Higher Learning Commission concluded that Mountain State did not meet "Criteria Two" for accreditation, which requires that "the institution's allocation of resources and its processes for evaluation and planning demonstrate its capacity to fulfill its mission, improve the quality of its education, and respond to future challenges and opportunities." www.mountainstate.edu/about-msu/accreditation.aspx

129.    The Higher Learning Commission found Mountain State "has not planned realistically to address challenges . . . it lacks adequate human and financial resources to fulfill its mission . . and its evaluation processes do not demonstrate reliable evidence of institutional effectiveness[.]" www.mountainstate.edu/about-msu/accreditation.aspx

16

130.    The Higher Learning Commission concluded that Mountain State does not meet "Criteria Three" for accreditation, which requires that "the institution provide[] evidence of student learning and teaching effectiveness that demonstrate it is fulfilling its educational mission."

131.    The Higher Learning Commission found that Mountain State "lacks sufficient oversight of, and resources to support, its teaching and learning process." www.mountainstate.edu/about-msu/accreditation.aspx.

132.    The Higher Learning Commission cited many academic reasons for its action to withdraw Mountain State's accreditation, including: Mountain State's culture was focused on high enrollment growth, not on quality and oversight; a long history of dominance by a small control group of administrators with a lack of oversight by the University's Board of Trustees; administrators failed to provide accurate and timely information to students in troubled programs, failing to take steps to ensure programs offered at Mountain State campuses and distance programs have the resources or support required; administrators lack credentials necessary for their job titles and duties, and certain programs lacked academic integrity, among other reasons.

133.    The Higher Learning Commission also cited financial reasons for its action to withdraw Mountain State's accreditation, including: a lack of realistic plans for the school's future in light of the loss of nursing and other accreditation, overall debt of $27 million; a promissory note due in July 2013 of $9.7 Million for which the lender is holding substantial cash collateral due to the failure of other collateral to suffice; a downgrade in Mountain State's bond rating; provisional certification from the U.S. Department of Education; and declining revenue and enrollment among other reasons.

17

134.    The $10.2 million debt Mountain State undertook in connection with the purchase of and improvements to the Martinsburg Mall constitutes nearly 38 percent of Mountain State's $27 million debt.

135.    In the wake of the Higher Learning Commission's action to withdraw accreditation, Mountain State is now attempting to rid itself of unnecessary debt and assets, and is in the process of attempting to sell the Martinsburg Mall.

**Count I**
**Negligence**

136.    Plaintiff hereby incorporates by reference the preceding allegations.

137.    Mountain State, Polk, and the Trustee Defendants owed Plaintiff Martin a duty of due care in all aspects of the operation of the school, specifically including taking the steps necessary to maintain its accreditation.

138.    The duty of due care owed by Mountain State, Polk and the Trustee Defendants extended to Plaintiff Martin and all Class Members.

139.    Mountain State, Polk, and the Trustee Defendants breached its duty of due care to Plaintiff Martin and all Class Members in numerous ways, including but not limited to, by failing to maintain accreditation and to take all steps necessary to maintain accreditation, including those identified by the Higher Learning Commission as the basis for its action to withdraw Mountain State's accreditation.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Defendants, for whatever damages Plaintiff and other Class Members

18

are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

## Count II
## Breach of Fiduciary Duty

140.    Plaintiff hereby incorporates by reference the preceding allegations.

141.    Mountain State, Polk, and the Trustee Defendants owed Plaintiff Martin and all Class Members a fiduciary duty.

142.    Defendants breach their fiduciary duties to Plaintiff and all Class Members by failing to take steps to retain Mountain State's accreditation and taking steps that caused Mountain State to lose its accreditation.

143.    Plaintiff and all Class Members were harmed by Defendants' breaches of their fiduciary duties.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Defendants for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

## Count III
## Negligent Misrepresentation

144.    Plaintiff hereby incorporates by reference the preceding allegations.

19

145.    Mountain State, Polk, and the Trustee Defendants made or caused to be made one or more innocent, negligent, or reckless omissions of fact, including but not limited to, representing that it possessed accreditation and leading students to believe it would continue to possess accreditation and they would graduate with accredited degrees, and failing to advise students of the very real risk that it would lose accreditation.

146.    Plaintiff Martin and other Class Members detrimentally relied on one or more statements of fact and omissions of fact made or caused to be made by Mountain State, Polk, or the Trustee Defendants by enrolling in Mountain State and expending time and effort and incurring tuition.

147.    Plaintiff Martin and other Class Members suffered injury as a result of their reliance on the misrepresentations and omissions by Mountain State, Polk, and the Trustee Defendants.

148.    The justifiable reliance by Plaintiff Martin and other Class Members was such that the injury they suffered inured to the benefit of Mountain State, Polk, and the Trustee Defendants.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Defendants, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

### Count IV
### Unjust Enrichment/Breach of Quasi-Contract

149.    Plaintiff hereby incorporates by reference the preceding allegations.

20

150.    Upon information and belief, Mountain State, Polk, and the Trustee Defendants received benefits from Plaintiff Martin and other Class Members in the form of tuition and fees, among other benefits.

151.    It is inequitable to allow Defendants to retain these benefits granted to them by Plaintiff Martin and other Class Members.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Defendants, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

### Count V
### Breach of Contract

152.    Plaintiff hereby incorporates by reference the preceding allegations.

153.    Mountain State entered into express or implied contracts with Plaintiff Martin and each Class Member under which it agreed to provide education and training from an accredited university.

154.    Mountain State breached its obligations under these contracts when Mountain State lost its accreditation.

155.    Plaintiff Martin and Class Members have been damaged as a proximate result of these breaches by Mountain State because, among other reasons, Class Members cannot complete their programs and obtain accredited credentials through Mountain State.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of

21

all Class Members, and against Defendants, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

**Count VI**
**West Virginia Consumer Credit and Protection Act**

156.    Plaintiff hereby incorporates by reference the preceding allegations.

157.    Plaintiff and Class Members are persons who can assert claims pursuant to the West Virginia Consumer Credit and Protection Act, WV Code § 46A-6-101, et seq.

158.    Plaintiff and Class Members enrolled in programs at Mountain State for their own personal betterment.

159.    At all relevant times, Mountain State had a legal duty to comply with the West Virginia Consumer Credit and Protection Act.

160.    Mountain State violated the West Virginia Consumer Credit and Protection Act.

161.    Plaintiff and other Class Members suffered a loss as a result of Mountain State's violations of this act.

162.    Plaintiff has complied with the requirements of W.Va. Code § 46A-6-106(b) by providing Mountain State with an opportunity to make a cure offer.

163.    Mountain State engaged in unfair, unconscionable, and deceptive methods, acts or practices with regard to the marketing of the educational programs it offered including, but not limited to:

a.   Representing that Mountain State possessed accreditation and leading students to believe it would continue to possess accreditation and they would graduate with accredited degrees;

b.   Failing to advise students of the very real risk that Mountain State would lose accreditation and the consequences to students of the loss of accreditation;

c.   Failing to reveal one or more material facts, the omission of which tended to mislead or deceive Plaintiffs, and the fact could not reasonably be known by Plaintiff Mullis and other Class Members, including, but not limited to, that Mountain State was at risk of losing its accreditation;

d.   The use of deception, misrepresentation and concealment relating to Mountain State's accreditation and the risk that Mountain State would lose accreditation;

e.   Making a representation of fact or statement of fact material to the transaction such that Plaintiff Mullis and other Class Members reasonably believed the represented or suggested state of affairs to be other than it actually was;

f.   Otherwise engaging in conduct which similarly creates a likelihood of confusion or misunderstanding with respect to the services and education offered; and

g.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

164.   As a direct and proximate result of Mountain State's violations of the West Virginia Consumer Credit and Protection Act, Plaintiff Martin and other Class Members have suffered and will continue to suffer harm, including, but not limited to, the waste and loss of time, money, and effort, of working toward completion of programs when they cannot obtain accredited credentials through Mountain State.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State, for whatever damages Plaintiff and the Class

23

Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but

not limited to, direct damages, incidental damages, consequential damages, exemplary damages,

punitive damages, injunctive relief and any other or further relief the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

**Respectfully submitted,**

**Lynnetta Martin,**
**individually and on behalf of a class**
**of similarly situated persons,**

**By counsel,**

/s/Harry F. Bell, Jr.
Harry F. Bell, Jr. (W.Va. Bar No. 297)
Jonathan W. Price (W.Va. Bar No. 10868
**THE BELL LAW FIRM, PLLC**
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723
(304) 345-1700
(304) 345-1715 Facsimile
E-mail: hfbell@belllaw.com
          jwprice@belllaw.com

**THE GOOGASIAN FIRM, P.C.**
Thomas H. Howlett (*Pro Hac Vice* application forthcoming)
Dean M. Googasian (*Pro Hac Vice* application forthcoming)
6895 Telegraph Road
Bloomfield Hills, MI 48301-3138
E-mail:thowlett@googasian.com
          dgoogasian@googasian.com

Dated:  September 17, 2012