```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          AT BECKLEY
```

LYNETTA MARTIN, individually
and on behalf of a class of
similarly situated persons

    Plaintiff,

v.                                    CIVIL ACTION NO. 5:12-03937

MOUNTAIN STATE UNIVERSITY, INC.,
et al.

    Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court is plaintiff's motion for class certification (Doc. No. 33). For the reasons that follow, the court denies the motion.

I. **Factual and Procedural Background**[1]

Plaintiff, Lynetta Martin, is a former computer science student at defendant Mountain State University ("MSU"). Plaintiff seeks damages to redress harm suffered as a result of MSU's loss of accreditation in July 2012. Plaintiff's amended complaint raises claims of negligence, breach of fiduciary duty,

---

[1] The following factual background of this matter is derived from exhibits presented by the parties and the evidence presented at the hearing on the motion for class certification held on December 18, 2013. The court makes these factual findings for the sole purpose of deciding plaintiff's motion for class certification.

1

negligent misrepresentation, unjust enrichment, breach of contract, and violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA").  Doc. No. 7 at 18-23.  In addition to MSU, plaintiff names seven trustees of the university and the former president of MSU, Charles H. Polk, as defendants. Plaintiff seeks to represent a class defined as "[a]ll individuals who reside outside West Virginia and had enrolled in any program at Mountain State University prior to July 10, 2012."  Id. at ¶ 23.  This matter has been fully briefed, an evidentiary hearing was held on December 18, 2013, and the parties submitted proposed findings of fact and conclusions of law.

MSU was founded in 1933 as Beckley College, and it maintained its main campus in Beckley, West Virginia until its closing at the end of 2012.  Doc. No. 47-7 at 4.  MSU received regional accreditation from the Higher Learning Commission of the North Central Association of Colleges and Schools ("HLC") in 1981.  Doc. No. 8 at ¶ 47.  MSU underwent a rapid expansion that began with the arrival of defendant Charles Polk as president in 1990.  Id. at ¶¶ 56, 63.  MSU maintained additional campuses in Charleston, and Martinsburg, West Virginia; Mooresville and Hickory North Carolina; Monaca, Pennsylvania; Orlando, Florida; and Washington, D.C.  Doc. No. 47-7 at 4.  MSU offered a number of degree and certificate programs including associates,

2

bachelors, and masters degrees in various fields of study. Id. at 42-43. These programs were offered in traditional classroom settings, through "distance learning" which included independent and online study, and through "cohort learning" involving a group of students that complete an entire program together. Id. at 34-35. MSU's enrollment statistics indicate that 2,055 "out-of-state" students were enrolled in 2010 and 1,658 in 2011. Doc. No. 47-2 at 607-08. Aid to these students was available in the form of grants, loans, work-study, fellowships, and some thirty-four separate merit and needs based scholarships. Doc. No. 47-7 at 15-17.

In late June of 2011, the HLC placed MSU's university-wide accreditation on "show cause" status because HLC "determined that the University may not meet one or more Criteria for Accreditation." Doc. No. 8 at ¶¶ 89-90. The HLC expressed concern that MSU lacked integrity and effective leadership, the allocation of its resources was not sufficient to fulfill its mission, and its resources and future plans were insufficient to maintain its programs. Doc. No. 33-2 at 4-5. Students admitted to MSU thereafter were advised of this show cause status in their acceptance letters. MSU's accreditation was eventually withdrawn in July of 2012, and MSU's subsequent appeal of that decision was unsuccessful. MSU remained accredited throughout

3

the brief appeals process. MSU closed its doors on December 31, 2012.

In an attempt to minimize the impact of the closure, MSU developed several "teach-out" plans to permit students to complete their studies. Students eligible to complete their studies by December 31, 2012 could earn their degrees at MSU as part of the "MSU Teach-Out." Doc. No. 45-2 at 205-212. Graduate students, associate degree students, and students in many programs having earned ninety credits by December 31, 2012 and who were eligible to complete their degrees in the spring of 2013 could enroll at the University of Charleston in January 2013 under the "UC Teach-Out." See generally id. at 6-204. For particular programs including the doctorate in executive leadership and physician assistant programs, the UC Teach-Out period extends until June 30, 2014. Id. at 2. Students who were enrolled in programs that the teach-out partners did not offer or anticipate adding, who had earned fewer than ninety credits, or were unable to complete their degree by May 2013 were advised not to enroll at MSU for the fall 2012 semester and to apply for admission to another institution. Id. at 3.

## II. Analysis

Rule 23 provides for a two-step analysis to determine whether to certify a class action. First, a plaintiff must satisfy all of the requirements of Rule 23(a). That is, a

4

plaintiff must show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).  The common short-hand for these requirements is numerosity, commonality, typicality, and adequate representation.  Second, a plaintiff must establish that the proposed class falls within one of the three subsections of Rule 23(b).  See Fed. R. Civ. P. 23(b)(1)-(3).  Here, plaintiff relies on Rule 23(b)(3) which authorizes certification when (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods of adjudication.

District courts have broad discretion to determine whether class certification is proper under Rule 23, and the district court will only be reversed upon a showing of abuse of that discretion.  Stott v. Haworth, 916 F.2d 134, 139 (4th Cir. 1990); see also Roman v. ESB, Inc., 550 F.2d 1343, 1349 (4th Cir. 1976) ("[T]he determination of a district court that an action does not meet the requirements of a class action will not be disturbed unless it is clearly erroneous.").  The party

seeking certification bears the burden of proving each of the requisite elements of Rule 23.  <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 321 (4th Cir. 2006).  The failure to establish these elements precludes class certification.  As stated by the Supreme Court,

> [A] party must not only "be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

<u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (quoting <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551-52 (2011).  Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982).  It is often the case that this "`rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  <u>Dukes</u>, 131 S. Ct. at 2551.

### a. Rule 23(a)

Defendants raise serious questions as to plaintiff's satisfaction of the Rule 23(a) requirements.  Namely, commonality, typicality, and adequacy of representation are called into serious doubt based on the evidence and briefing presented by defendants.  Nonetheless, because it is clear that plaintiff has not met Rule 23(b)(3)'s requirement of

6

predominance and superiority as will be discussed below, the court need not address Rule 23(a)'s requirements.

### b. Rule 23(b)

For class certification to be proper, a "party must . . . satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Comcast, 133 S. Ct. at 1432. Plaintiff relies on Rule 23(b)(3) which provides that certification is proper only when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance standard is related to Rule 23(a)(2)'s commonality prerequisite, but it is far more demanding. Comcast, 133 S. Ct. at 1432. Rule 23(b)(3) was adopted in 1966 to cover "situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citing Fed. R. Civ. P. 23, Adv. Comm. Notes to 1966 amendment) (internal quotations omitted). As such, the "provision invites a close look at the case before it is accepted as a class action . . . ." Id. The rule provides a nonexhaustive list of the factors relevant to this "close look" which includes,

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiff has failed to meet her burden of establishing the Rule 23(b)(3) requirements of predominance and superiority. Several factors mandate this result. First, plaintiff has wholly failed to present any choice of law analysis or made any significant attempt to show that variations in state law will not defeat predominance. Second, the varied and diverse circumstances of the proposed class members indicates that individualized proof of damages and causation will be required; such individualized proof defeats predominance. Finally, the potential individual damages awards in this matter are substantial rendering the class action mechanism less useful and giving a strong interest to class members in individually controlling the prosecution of their claims.

### 1. Choice of Law

A threshold consideration under the predominance requirement is the law to be applied in the action. When the law of multiple states is to be applied, predominance is

potentially defeated because of the significant manageability problems that can arise. See In re Digitek Products Liab. Litig., 2010 WL 2102330 (S.D.W. Va. May 25, 2010) (Goodwin, C.J.) (determining that plaintiffs could not show that common questions of law predominate when various laws had not been identified and compared). As, the principal commentators on the Federal Rules put it,

> As a matter of general principle, the predominance requirement of Rule 23(b)(3) will not be satisfied if the trial court determines that the class claims must be decided on the basis of the laws of multiple states . . . . The application of multiple state laws to the action works to defeat predominance because the legal issues no longer pose a common question. . . . [T]he district court is required to determine which law will apply before making a predominance determination and plaintiff has the burden to show that variations in state law do not defeat predominance. Indeed, the [court in Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir. 1996)] suggested that the plaintiff's burden includes providing the district court with a survey critically analyzing the differences in each state's laws and discussing how the court could deal with these variations.

Charles A. Wright, 7AA Federal Practice & Procedure § 1780.1. Plaintiffs have failed to meet this burden. The likelihood that multiple states' laws would apply to this class action in conjunction with the fact that plaintiff has provided no analysis of these states' laws signifies that plaintiff has not shown predominance and superiority.

At the hearing on the motion for class certification, defense counsel raised serious concerns about the lack of a choice of law analysis by plaintiff. Apparently misunderstanding how choice of law works, plaintiff's counsel responded to these concerns by stating that "we are pursuing this under West Virginia law." Doc. No. 55 at 42. Unfortunately, it is not that simple. A brief choice of law analysis to this case reveals that the law of multiple states is likely to apply. The proposed class consists of "[a]ll individuals who reside outside West Virginia" and had enrolled in an MSU program. So, as elaborated more fully below, it is likely that West Virginia law would not apply to very many if any of the proposed class members claims.

Federal courts sitting in diversity apply the choice of law rules of the forum in which the court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). As such, this court is required to apply West Virginia's choice of law rules. West Virginia adheres to the doctrine of lex loci delicti. That is, in the context of torts the court will apply the law of the place of the injury. Paul v. Nat'l Life, 352 S.E.2d 550, 551, 555-56, & n.13 (W. Va. 1986). With respect to contract claims, "the law of the state in which the contract is made and to be performed governs the construction of a contract. . . ." General Elec. Co. v. Keyser, 275 S.E.2d 289, 292 (W. Va.

1981) (internal quotations omitted). For this purpose, a contract is made in the state where the last event necessary to make the contract binding occurs. McGough v. Nalco Co., 496 F. Supp. 2d 729, 741 (N.D.W. Va. 2007).

Applying these lex loci principles to plaintiff's tort claims, it would appear that the "place of injury" was the place where the alleged harm was felt – in each student's place of residence. See Digitek, 2010 WL 2102330, at *7 n.2 (noting that plaintiffs had "focus[ed] too heavily on the defendants' wrongdoing and practically ignore[d] the choice-of-law impact of the location where the class members were harmed."). As such, the law of the state where each student lived would likely apply to their various tort claims. Taking plaintiff as an example, the law of Ohio would likely apply to her tort claims. MSU maintained campuses in West Virginia, Florida, North Carolina, Pennsylvania, and Washington, D.C. When you factor in the online courses which were available throughout the United States, it becomes clear that a multitude of states' laws could potentially apply to the various claims in this action. With respect to the contract claims, an individualized inquiry would be required to determine where the last act necessary to make that particular contract binding occurred.

It could be that there are no meaningful differences in the various laws of tort and contract among the multitude of states

11

in this matter. But just as likely, there will be differences. These differences could include the duties a state recognizes, the defenses a state recognizes, or any number of critical and potentially dispositive considerations. The point is that it is plaintiff's burden to show that such differences will not defeat predominance. Plaintiff has offered no such analysis. As such, she has failed to meet her burden of establishing that common issues of law and fact predominate over questions affecting only individual members.

### 2. Individualized Proof

The failure of plaintiff to appropriately address the choice of law problem is sufficient to deny class certification. However, a closer look at plaintiff's proposed class action reveals that it suffers from additional deficiencies. While it is unclear which states' laws will apply to the various claims of the proposed class members, it is clear that individualized proof will permeate this matter, overtake the questions that are common, and defeat predominance. Primarily, this individualized proof will be required to show causation and damages. It is true that "the need for individualized proof of damages does not necessarily preclude class certification so long as common issues continue to predominate." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147 (4th Cir. 2001). Nonetheless, "it is impermissible to determine damages on a classwide basis in order

12

to facilitate class treatment of a case when the governing law requires individualized proof of damages." Id.

The various forms of financial aid available to MSU students in conjunction with the diverse fields of study and forms of educational delivery signify that different students likely had very different experiences and outcomes from one another. It is possible that a number of the putative class members – those who completed their studies under the teach-out plan or at another institution – did not suffer cognizable harm as a result of MSU's loss of accreditation and closing. Plaintiff herself apparently could have graduated under the teach-out program since she only needed nineteen additional credit hours to complete her associate degree. Doc. No. 45-2 at 128. This fact, if proven by competent evidence at trial, would go directly to a mitigation of damages argument. This is only one example. It is likely that the varied and diverse circumstances of each putative class member would require an individual inquiry and entirely overtake the common questions in this case.

Plaintiff contends that such required proof of individualized damages should not defeat class certification, arguing that the court can bifurcate the case. Doc. No. 55 at 11 ("[T]o be clear, what we are suggesting is the court grant class certification, handle the liability issue on a class-wide

13

basis, and then, to the extent anything is necessary in terms of individual damages, if it ever gets that far, those can be dealt with in another manner."). Plaintiff's solution may have been practical if damages and liability could be so easily separated. But, a cursory look at plaintiff's claims reveals that proof of damages will be essential to a finding of liability. Our court of appeals has "held that the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability." Lienhart, 255 F.3d at 147 (citing Windham v. American Brands, 565 F.2d 59, 66 (4th Cir. 1977)).

Here, proof of damages will be essential to liability for most of plaintiff's claims. It is hornbook law that the elements of negligence are duty, breach, causation, and damages. That is, there is no tort of negligence without damages. Likewise, negligent misrepresentation requires an injury that results from justifiable reliance upon the misrepresentation.[2] Falio v. City of Clarksburg, 655 S.E.2d 143, 151-52 (W. Va. 2007). A breach of fiduciary duty claim requires damage proximately caused by the breach. State ex rel. Affiliated

---

[2] Class certification of the negligent misrepresentation claim is inappropriate for another critical reason. Namely, "[b]ecause proof of reliance is generally individualized to each plaintiff allegedly defrauded, fraud and negligent misrepresentation claims are not readily susceptible to class action treatment, precluding certification of such actions as a class action." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004).

Const. Trades Found. v. Vieweg, 520 S.E.2d 854, 868 (W. Va. 1999) (Workman, J., concurring).  A claim under the WVCCPA requires a showing of proof of an ascertainable loss and a causal connection between that loss and the alleged deceptive conduct.  White v. Wyethe, 705 S.E.2d 828, 837 (W. Va. 2010). As such, damages cannot be so easily separated from liability as plaintiff suggests.

Not only is the calculation of damages on a classwide basis made difficult by the diverse circumstances of the proposed class members, but the determination of liability will require an individualized inquiry to determine that the proposed class members were in fact harmed by the loss of accreditation and closing of MSU.  These facts will not be susceptible to classwide proof.  Consequently, plaintiff has failed to show that common issues will predominate.

### 3. Potential Individual Damages Awards

Another critical consideration affecting predominance and superiority is the ability and willingness of individual class members to bring individual actions.  Perhaps most important to this inquiry is the size of the individual claims, because "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 617 (1997).  A direct corollary to this notion is that large

15

individual recoveries provide incentives to individuals to bring actions on their own behalf, and they would likely have a greater interest in controlling the prosecution of their claims. "While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem, 521 U.S. at 617 (1997) (internal quotations omitted). Indeed, it is the very policy of class actions to avoid the problem that arises when small claims do not provide the incentive to any individual to bring an action on his own behalf. "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).

Here, the damages alleged are not insubstantial. Tuition at MSU ranged from $320 up $495 per credit hour depending on the course of study. Doc. No. 47-7 at 11-12. Plaintiff alleges she incurred "thousands of dollars in tuition expenses in connection with pursuing her education from" MSU. Doc. No. 7 at ¶ 22. Plaintiff also alleges consequential and incidental damages. Potential recoveries of this nature provide a strong incentive to putative class members to pursue individual actions and to

16

have more direct control over prosecuting the action than the class action mechanism provides.  As such, a class action is not superior to other available methods for adjudicating this controversy.

### III. Conclusion

For the reasons discussed above, the court DENIES plaintiff's motion for class certification (Doc. No. 33).

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 31st day of March, 2014.

ENTER:

David A. Faber
Senior United States District Judge

17