IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

REBECCA MULLIS,

       **Plaintiff,**

v.                                         **Civil Action No. 5:12-cv-3158**
                                            **The Honorable David A. Faber**

MOUNTAIN STATE UNIVERSITY, INC.,

       **Defendant.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

LYNNETTA MARTIN,

       **Plaintiff,**

v.                                           **Civil Action No. 5:12-cv-3937**
                                            **The Honorable David A. Faber**

MOUNTAIN STATE UNIVERSITY, INC.,
*et al.*,

       **Defendants.**

**DEFENDANTS' MOTION TO STAY PROCEEDINGS
AND SUPPORTING MEMORANDUM**

      Defendants Mountain State University, Inc. ("MSU"), MSU Trustees Jerry T. Ice, V. Max Beard, Mona K. Wiseman, Frank S. Harkins, Jr., Harriett W. Cabell, Elmer Coppoolse, and Lynn Blanchard, by counsel, move this Court for an order staying the proceedings pending the approval by the West Virginia Mass Litigation Panel ("MLP") of a Limited Fund class action settlement of all claims related to MSU's loss of accreditation and/or alleged insufficient delivery of services, including Plaintiffs' claims. Defendant Charles Polk, who is a defendant in

*Martin v. Mountain State University, Inc., et al.*, Civil Action No. 5:12-cv-3937, joins in this motion to stay.  In support of this motion, Defendants state as follows:

## I.   STATEMENT OF THE CASES

1.    The above-captioned cases involve claims that have been brought against MSU seeking to redress harms Plaintiffs allegedly suffered as a result of MSU's loss of accreditation and closing and due to an alleged insufficient delivery of services.[1]  In each case, the Plaintiff is represented by The Googasian Firm, P.C., and The Bell Law Firm, PLLC, and MSU and its former Trustees are represented by Steptoe & Johnson PLLC.  Former MSU President Charles H. Polk is represented by Tiffey Law Practice, PLLC.  These cases have proceeded in lock step with each other and are scheduled to continue that way through the pre-trial conferences on February 2, 2015.  *Martin* is scheduled for trial on February 24, 2015; *Mullis* on April 28, 2015.

2.    While both of these cases were originally filed as putative class actions, this Court, on March 27 and March 31, 2014, denied each Plaintiff's respective motion for class certification.[2]  Neither Plaintiff appealed the Court's decision.  As a result, these cases are proceeding as individually filed civil actions.

3.    As alleged in her Amended Complaint, Plaintiff Rebecca Mullis enrolled in MSU's online Diagnostic Medical Sonography ("DMS") program in 2008.  *See* Am. Compl.

---

[1] In *Martin v. MSU, et al., Civil Action No. 5:12-cv-3937*, Plaintiff has also asserted claims against MSU's former Trustees and its former President, Charles H. Polk.

[2] Plaintiff Rebecca Mullis sought to represent a class defined as "[a]ll individuals who enrolled in an online Diagnostic Medical Sonography program at [MSU] at any time from the program's inception in 2007 to the present, for whom [MSU] provided no clinical externship site within three hours of the student's home or another practicable location in the student's area." Am. Compl. ¶ 21.  Plaintiff Lynetta Martin sought to represent a class defined as "[a]ll individuals who reside outside West Virginia and had enrolled in any program at [MSU] prior to July 10, 2012." Am. Compl. ¶ 23.

¶ 12.  Plaintiff Lynetta Martin enrolled in MSU's online Computer Science Associate Degree program in 2010 but did not graduate from MSU before MSU lost its accreditation.  *See* Am. Compl. ¶ 20.

## II.      CASES BEFORE THE MLP AND THE LIMITED FUND SETTLEMENT

1.      Since March 2011, hundreds of lawsuits have been filed against MSU (and others) in West Virginia state courts, all asserting claims arising from MSU's loss of various types of accreditation or arising from an alleged insufficient delivery of services.   On December 6, 2012, the West Virginia Supreme Court of Appeals issued an order referring all of those cases to the MLP.

2.      After lengthy and at times contentious settlement negotiations, MSU, certain plaintiffs with cases before the MLP, The University of Charleston, Inc. ("Charleston"), and MSU's insurer, United Educators Insurance Risk Retention Group, Inc. ("United Educators") entered into a Settlement Agreement and Release ("Settlement Agreement") on September 4, 2014.  If and when approved by the MLP, this limited fund class settlement agreement will comprehensively resolve all of MSU's accreditation-related litigation and all current litigation related to MSU's alleged insufficient delivery of services.  A copy of the "Settlement Agreement" is attached as "Exhibit A" to "Exhibit 1."  On September 5, 2014, the plaintiffs in these MLP actions filed various documents necessary to obtain Preliminary Approval of the Settlement Agreement from the MLP.[3]  The MLP has scheduled a hearing for October 6, 2014, on the MLP plaintiffs' Motion for Preliminary Approval, and the parties will jointly be seeking a prompt decision from the MLP.

---

[3]  The documents that were filed included the following:   (1) Plaintiffs' Motion for and Memorandum in Support of Preliminary Approval of Class Settlement, attached as "Exhibit 1"; (2) a proposed Preliminary Approval Order, attached as "Exhibit 2"; and (3) Motion for Leave to File Limited Fund Class Amended Complaint, attached as "Exhibit 3."

3.      The purpose of the MLP plaintiffs' filings is to obtain the MLP's preliminary approval of the Settlement Agreement and preliminary certification of a "Limited Fund" class pursuant to Rule 23(b)(1)(B) of the West Virginia Rules of Civil Procedure for the purposes of the class settlement.  As stated in the Settlement Agreement, the Limited Fund class definition that the parties are seeking to have approved and certified is as follows:

> All persons who,
>
> (1) on or after May 27, 2008, attended classes with Mountain State University, Inc. in nursing or any health sciences program, including but not limited to pre-nursing, the Certified Registered Nurse Anesthetist program and/or the Diagnostic Medical Sonography program; or,
>
> (2) on or after May 27, 2008, attended classes with Mountain State University, Inc. in any other program not expressly identified in above-referenced part (1) and who did not obtain a degree from The University of Charleston, Inc. or Mountain State University, Inc. with applicable national, regional, and state accreditation in effect prior to program closure, or expiration of teach-out opportunities.

Ex. A of Ex. 1, p. 7.  Based on this class definition, Plaintiff Mullis is included in the class under paragraph (1) of the definition, and Plaintiff Martin would be included in the class under paragraph (2).

4.      Rule 23(b)(1)(B) of the Rules of Civil Procedure addresses Limited Fund class actions.  Under that rule,

> [a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied and, in addition: (1) [t]he prosecution of separate actions by or against individual members of the class would create a risk of (B) [a]djudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

W. Va. R. Civ. P. 23(b)(1)(B).  The basic concept of a Limited Fund settlement is that there is a limited amount of capital or funds available to pay the claims of class members, and the amount available is insufficient to cover all claims.  In the Limited Fund setting, "equity require[s] absent parties to be represented, joinder being impractical, where individual claims to be satisfied from the one asset would, as a practical matter, prejudice the rights of absent claimants against a fund inadequate to pay them all." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 836 (1999).

5.     MSU's circumstances fit squarely within the Limited Fund framework. Beginning in January 2013, and due to the loss of its accreditation, MSU lost its ability to offer educational services and therefore nearly all potential to earn revenue or income.  Yet MSU continues to face significant expenses in maintaining its real property.  As a result, numerous former MSU students who have potential claims against MSU are faced with the situation in which (1) MSU has limited and finite assets; and (2) these limited assets are insufficient to satisfy all of the claims that are currently pending, or could be filed in the future, against MSU due to its loss of accreditation.  This situation creates the possibility that, if cases proceed individually against MSU, and if early plaintiffs are successful in their cases, MSU's assets will be depleted before all claimants have an opportunity to pursue and collect on their claims.  By MSU committing substantially all of its assets to a Limited Fund, and by determining a reasonable method for paying plaintiffs from that fund, a potentially harsh result is avoided and a mechanism is created which permits a more fair result for all former students who have claims.

6.     If the Settlement Agreement gains the final approval of the MLP, and any and all appeals are resolved in its favor, a Limited Fund will be created and will be funded by various sources.  These sources include substantially all of MSU's assets and a substantial

contribution from MSU's insurer, United Educators.   The Limited Fund will include the following assets:

a. The remaining liquid assets of MSU to be fully and finally quantified after Final Approval of the Limited Fund settlement and approved by the MLP;

b. New funds, including without limitation rental income, obtained by MSU;

c. Department of Education funds potentially forthcoming to MSU, if and when paid by the Department of Education;

d. Real property of MSU, subject to Charleston's right to use a limited number of the buildings to teach until June 30, 2015 under an amended lease for that property;

e. Personal Property of MSU, exclusive of certain building contents and equipment being transferred to Charleston;

f. An insurance contribution from MSU's insurer, United Educators, in the total and final amount of eight million five hundred thousand dollars ($8.5 million);[4]

g. Subject to donor restrictions, assets of the Mountain State University Building Company; Mountain State University Endowment Fund, Inc.; and Mountain State University

---

[4] That amount represents 85 percent of the $10 million insurance policy allegedly in play.  The 15 percent discount accounts for the risk that United Educators could prevail on a pending appeal in which it argued that MSU's available insurance coverage for plaintiffs' claims is zero, or, at most, $150,000.  *See, e.g., Edgerton v. Dewaay Fin. Network LLC,* Nos. LACV6033, LACV6034, 2013 WL 4404708, at *11 (Iowa Dist. Apr. 15, 2013) (approving limited fund settlement agreement that includes insurance proceeds less than full policy limits because "[s]ettlement in this amount without the costs and delays of coverage litigation appear[s] to be in the best interests of the class").

Foundation, Inc. which remain with the Building Company, the Endowment, or the Foundation as of December 31, 2015. Until December 31, 2015, these assets will be used solely for use in encouraging potential buyers of MSU's real and personal property; and

h.     Any gifts or bequests received by MSU prior to the time that the Court determines that MSU has satisfied its obligations under the Settlement Agreement.

7.     The Settlement Agreement further provides that MSU must certify to the MLP that it has disclosed its assets to the parties and that all real property, contents and equipment, liquid assets, and current assets have been either liquidated or transferred in accord with the provisions of the Settlement Agreement or have been conveyed to the Limited Fund.

8.     While MSU's real and personal property is being sold for the benefit of the claimants who will recover from the Limited Fund, the Settlement Agreement allows MSU to retain its liquid assets to fund its operations and maintain its real estate holdings.  Any payments that MSU makes with these liquid assets are subject to a budget and, if MSU exceeds the budget by ten percent, a reporting requirement.  If there are any remaining liquid assets after either (a) all the real and personal property is sold or (b) after MSU no longer wants to have any involvement in the sale of its real and personal property, those remaining liquid assets will go into the Limited Fund.

## III.     ARGUMENT

### This Court Should Exercise Its Inherent Power To Stay The Proceedings.

This Court has the inherent power to stay these proceedings.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In the face of parallel proceedings, this power is not limited to instances in which "the parties of the two causes [are] shown to be the same and the issues identical."  *Id.*  Nor is it restricted to circumstances in which all lawsuits at issue are pending in federal district courts, as they were in *Landis*.  Indeed, in *Ambur v. Lizars*, 372 F.2d 103 (4th Cir. 1967), the Fourth Circuit held that "Justice Cardozo's oft-quoted words in *Landis*" apply equally "where the prior proceedings are in the state court."  *Id.* at 106 (citing *Mottolese v. Kaufman*, 176 F.2d 301 (2d Cir. 1949) (Hand, J.)); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 820 (1976) (federal court abstention in favor of parallel state court proceedings might be appropriate when, among other things, abstaining would avoid piecemeal litigation and the state court proceeding is not inadequate to protect the rights of the parties to the federal case).

Under the Supreme Court's authority in *Landis*, in addition to concern for "economy of time and effort for [the court], for counsel, and for litigants," 229 U.S. at 255, three considerations are relevant to whether a court should exercise its discretionary power to stay proceedings before it:  "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *White v. Ally Financial Ins.*, 969 F. Supp.2d 451, 462 (S.D. W. Va. 2013) (summarizing the *Landis* factors) (citation and quotation marks omitted).  Each factor militates in favor of staying the *Mullis* and *Martin* proceedings.

A.      **The interests of judicial economy clearly favor granting the stay.**

It would be inefficient to permit these actions to proceed because a parallel state

settlement, if it becomes approved and final, will resolve, and release, the claims of Plaintiffs

Mullis and Martin.  A Limited Fund class has several unique characteristics.  One is that a

Limited Fund class is a "mandatory" class that definitively resolves all claims within its scope.

In other words, under a Limited Fund class, class members may not "opt out" of the settlement.

*Stott v. Capital Financial Services, Inc.*, 277 F.R.D. 316, 326-27 (N.D.Tex. 2011) ("This kind of

class action necessarily provides for mandatory participation by class members because allowing

class members to opt out of the class and pursue individual claims would deplete the fund to the

detriment of other class members").  As noted above, Plaintiffs Mullis and Martin are both

members of the proposed Limited Fund class.  Therefore, upon certification of the Limited Fund

class, Plaintiffs Mullis and Martin will become parties to the MLP litigation as members of a

non-opt-out class.[5]  Should the Settlement Agreement become final, Plaintiffs Mullis and Martin

---

[5] Additionally, if the MLP enters the proposed Preliminary Approval Order submitted to it, Plaintiffs will be enjoined from proceeding with their claims in this Court:

> [p]ending the final determination of whether the Agreement should be finally approved, each of the Putative Class Representatives and **each Putative Class Member is hereby enjoined from commencing or prosecuting, either directly or indirectly, any action in any other court concerning or relating to any of the Released Claims**. Such injunction shall remain in force unless the Agreement fails to become Final or until such time as the Parties notify the Court that the Agreement has been terminated.
>
> * * *
>
> This injunction is necessary to protect and effectuate the Agreement, and the settlement contemplated thereby, this Preliminary Approval Order, and the Presiding Judges' flexibility and authority to effectuate the settlement set forth in the Agreement and to enter Final Judgment, if and when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

Ex. 2 (emphasis added); *see also Stott,* 277 F.R.D. at 327 (A "[c]ommon feature[] of a 'limited fund'

will be invited to participate in the resulting claims process, in accordance with the terms of the Settlement Agreement.  As their claims in these actions will be released by the Settlement Agreement, there will be no need for their claims to progress through this Court.

Indeed, to avoid inconsistent outcomes and duplication of effort and to address claim preclusion issues, federal district courts faced with similar circumstances—a state court settlement that would resolve a federal plaintiff's claims—routinely stay matters before them to conserve judicial resources.  *See, e.g.*, *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp.2d 688, 692 (N.D. W. Va. 2010) ("Courts routinely exercise this [inherent] power [to] grant[] stays when a pending nationwide settlement could impact the claims."); *Branca v. Iovate Health Sciences USA, Inc.*, 2013 WL 1344306, at *1 (S.D. Cal. Apr. 2, 2013) (staying federal class action pending approval of settlement in parallel state class action because "proceeding with this case would be a waste of the Court's resources and potentially result in duplicative litigation"); *Lindley v. Life Investors Ins. Co. of Am.*, 2009 WL 3296498, at *3 (N.D. Okla. Oct. 9, 2009) ("If the [state court] settlement is approved, it is likely that many putative members of plaintiff's proposed class will be members of the settlement class, and the doctrine of *res judicata* will bar relitigation of their claims in this Court."); *Klabo v. Myhre*, 2004 WL 554794, at *4 (N.D. Ind. Feb. 6, 2004) (stay entered where named plaintiff in the federal litigation is a member of the state court class such that "there is a substantial likelihood that the non-federal litigation will dispose of all clams presented in the federal case") (internal quotation marks omitted); *Chartener v. Provident Mut. Life Ins. Co.*, 2003 WL 22518526, at *3 (E.D. Pa. Oct. 22, 2003) (stay is appropriate where federal plaintiff is a member of the state court class "because this Court will necessarily have to engage in an analysis of whether Plaintiff's claims are subject to *res judicata*

---

settlement thus include[s] . . . for the approving court to enjoin claims brought in other forums by individual class members that would deplete the fund if the individual class members managed to obtain an award from the defendant").

or collateral estoppel"); *In re: Systems Software Assocs., Inc. Securities Litigation*, 1998 WL 673831, at *3 (N.D. Ill. Sept. 23, 1998) ("The court finds that the State court action would have preclusive effect over some of the claims in the Federal court action and, accordingly, stays this action.").

Such a stay is proper even though the settlement has not yet received preliminary approval by the state court. *See, e.g.*, *Branca*, 2013 WL 1344306, at *1 (state class settlement had not yet been preliminarily approved); *Lindley*, 2009 WL 3296498, at *3 (state class settlement had been preliminarily approved, but awaited fairness hearing and final approval); *Annunziato v. eMachines Inc.*, 2006 WL 5014567, at *5-*6 (C.D. Cal. July 24, 2006) (parties had only filed motion for preliminary approval of state class settlement); *Robinson v. Direct Merch. Credit Card Bank, N.A.*, 2002 WL 373267, at *1 (E.D. La. Mar. 7, 2002) (state class settlement was "tentative"); *Gabelli v. Sikes Corp.*, 1990 WL 213119, at *7 (S.D.N.Y. Dec. 14, 1990) (state class settlement was "tentative" and had not been finalized or submitted to court for approval); *Chartener*, 2003 WL 22518526, at *4 (staying federal putative class action for six months to allow state court class settlement agreement to become final).

Furthermore, should the MLP approve the Settlement Agreement, the settlement will be entitled to Full Faith and Credit protection in this Court under 28 U.S.C. § 1738, and will bar Plaintiffs' claims. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give effect to a state court class action and settlement to the same extent as the approving state court would give it effect. The Act provides that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." *Id.* For *Martin* and *Mullis*, this language means that this Court must treat the class settlement resolution in the same

manner that a West Virginia court would treat it, in effect standing in the shoes of the state court. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 374 (1996) ("a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the Act"); *see also Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp.2d 936, 942-43 (E.D. Ark. 2010). Thus, if the settlement is approved by the MLP, and due process is afforded, then Plaintiffs' claims in this Court will be barred under principles of *res judicata*.

For all of these reasons, a stay promotes judicial economy and is a better, and more efficient, use of this Court's and the parties' time and efforts.

**B.      If these actions are not stayed, Defendants could suffer severe hardship.**

As noted above, substantially all of MSU's assets will be contributed to the Limited Fund. Moreover, MSU's insurer, United Educators, is making a substantial contribution of $8.5 million dollars to the Limited Fund. In pledging these assets, and in agreeing to the certification of a Limited Fund class for settlement purposes, MSU intends to resolve all of the potentially viable accreditation-related claims that can be asserted against it and other individual defendants. If Plaintiffs' cases were allowed to proceed outside of the Limited Fund settlement, MSU will be placed in the difficult position of pledging substantially all of its assets to the Limited Fund but potentially needing assets to address any potential judgments from Plaintiffs' cases. If MSU were to use assets that were pledged for the Limited Fund for Plaintiffs' cases, it would be in breach of the Limited Fund Settlement Agreement.

Not only will MSU suffer hardship if a stay is not granted, but the individually-named defendants could also suffer hardship. If the Limited Fund settlement is approved, all of the individual defendants in these cases will be released from all claims that could be asserted by

any member of the Limited Fund class.  If Plaintiffs' cases are allowed to proceed, the closure contemplated by the class settlement is not achieved, and settling parties will have powerful incentive to back out.  The net result would be continued long and protracted litigation.

### C.     Granting the stay will not prejudice Plaintiffs.

Assuming the MLP preliminarily approves the Settlement Agreement, Plaintiffs, as class members, will have the opportunity to object and will be entitled to be heard on fairness and adequacy issues before the MLP decides whether to enter an order which grants the Settlement Agreement final approval.  *See Davis v. Homecomings Financial*, 2006 WL 2927702, at *3 (W.D. Wash. Oct. 10, 2006) ("If members of the class believe that the proposed settlement is unfair, they can file their objections in [the state court] case.").  Moreover, the proposed Preliminary Approval Order specifically provides that

> [a]ny Putative Class Member may appear at the Fairness Hearing, in person or by counsel, and be heard to the extent allowed by the Presiding Judges in support of or in opposition to class certification, the fairness, reasonableness, and adequacy of the settlement set forth in the Agreement, and any applications for an award of attorney's fees, costs, and expenses.

Ex. 2.  Thus, Plaintiffs will have the opportunity to attempt to protect their interests and to be heard on any concerns they have with the proposed settlement.  Plaintiffs' counsel are well aware of this opportunity, as they have already advised counsel involved in the Limited Fund class settlement that they intend to lodge objections to the settlement.  *See* September 12, 2014 Letter from Plaintiffs' Counsel, attached as "Exhibit 4."

Moreover, as members of the proposed class, and upon certification of that class and approval of the Settlement Agreement, Plaintiffs will be eligible to share in the recovery contemplated by the settlement in accordance with the terms of the Settlement Agreement.  Even if the Court does not grant this stay, it is unlikely that Plaintiffs will be able to recover even if

they obtain a judgment against MSU.  Plaintiffs' cases are not scheduled for trial until February and April of next year.  Even if either Plaintiff were to prevail, post-trial proceedings (including appeals) could easily stretch out for years.  Meanwhile, if the Settlement Agreement is approved by the MLP, and if the proposed assets are submitted to the Limited Fund prior to the execution of those judgments, all assets reasonably available to satisfy Plaintiffs' potential judgment(s) could be gone—exhausted by funding the global settlement.  It seems, therefore, that the proposed Limited Fund settlement offers advantages to these Plaintiffs not otherwise available and that a stay would not be prejudicial to them.

## IV.   CONCLUSION

In conclusion, MSU and others have worked hard and have spent a significant amount of time reaching a settlement agreement that provides a settlement mechanism that addresses all of the various claims that have been asserted, or that could be asserted, against MSU and other Defendants, including the claims of Plaintiffs Mullis and Martin.  Because MSU's assets are diminishing and finite, and because there are potentially thousands of students who may file claims against MSU and others, the Limited Fund class action is the most appropriate vehicle for addressing MSU's unique situation and offers the best protection possible for all of the various students who have claims against MSU.  By granting the motion to stay in Plaintiffs' cases, the Court will be permitting the Limited Fund approval process to run its course.[6]

---

[6] While Defendants recognize that the MLP has not yet entered an Order preliminarily approving the Limited Fund settlement, Defendants are filing this motion now so that the issue can be placed before the Court.  When the MLP issues its ruling after the October 6, 2014 hearing, Defendants will supplement this motion to advise this Court as to whether the MLP granted or denied the Motion for Preliminary Approval.

**WHEREFORE**, Defendants respectfully request that this Court enter an order staying these cases pending approval of the Limited Fund settlement reached in the MLP litigation.

Dated this 18th day of September, 2014.


/s/John R. Merinar, Jr.
John R. Merinar, Jr. (W.Va. Bar No. 6080)
Richard M. Yurko, Jr. (W. Va. Bar No. 4180)
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
(304) 933-8183 (facsimile)
jack.merinar@steptoe-johnson.com
richard.yurko@steptoe-johnson.com

*Counsel for Mountain State University,
Jerry T. Ice, V. Max Beard, Mona K.
Wiseman, Frank S. Harkins Jr., Harriett
W. Cabell, Elmer Coppoloose, and Lynn
Blanchard*



/s/Edward P. Tiffey
Edward P. Tiffey (W. Va. Bar No. 6042)
Tiffey Law Practice PLLC
P.O. Box 3785
Charleston, WV 25337-3785
(304) 344-3200
ed@tiffeylaw.com

*Counsel for Defendant Charles H. Polk*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

**REBECCA MULLIS,**

      **Plaintiff,**

**v.**                                           **Civil Action No. 5:12-cv-3158**
                                              **The Honorable David A. Faber**

**MOUNTAIN STATE UNIVERSITY, INC.,**

      **Defendant.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**LYNNETTA MARTIN,**

      **Plaintiff,**

**v.**                                             **Civil Action No. 5:12-cv-3937**
                                              **The Honorable David A. Faber**

**MOUNTAIN STATE UNIVERSITY, INC.,**
*et al.*,

      **Defendants.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 18th day of September, 2014, I electronically filed "Defendants' Motion to Stay Proceedings and Supporting Memorandum" with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

Harry F. Bell, Jr.                    Thomas H. Howlett
Jonathan W. Price                  Dean M. Googasian
The Bell Law Firm, PLLC         The Googasian Firm, P.C.
30 Capitol Street                   6895 Telegraph Road
P.O. Box 1723                      Bloomfield Hills, MI 48301-3138
Charleston, WV 25326-1723
Email:  hfbell@belllaw.com       Email:  thowlett@googasian.com
       jwprice@belllaw.com             dgoogasian@googasian.com

Edward P. Tiffey
Tiffey Law Practice, PLLC
205 Capitol Street
P. O. Box 3785
Charleston, WV 25301-3785
Email:  ed@tiffeylaw.com

/s/John R. Merinar, Jr.
Richard M. Yurko, Jr. (W.Va. Bar No. 4180)
John R. Merinar, Jr. (W. Va. Bar No. 6080)
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330